RUFINA ACOSTA VDA. DE MARRERO, como Administradora Judicial de la Sucn. de Máximo Marrero, demandante y apelada, *v.* AURORA ROSADO, demandada y apelante.

Núm. 7504.—*Sometido:* Diciembre 13, 1938. *Resuelto:* Marzo 9, 1939.

*R. Padró Parés,* abogado de la apelante; *José C. Jusino,* abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Rufina Acosta fué nombrada administradora judicial de los bienes relictos por su esposo Máximo Marrero. En el expresado carácter instituyó este pleito contra su suegra Aurora Rosado y los esposos Sergio Dávila y Rita Agrait. Alegó como causa de acción: Que ella y su esposo Máximo Marrero eran dueños de una casa radicada en un solar que habían comprado a plazos a José L. Pesquera y que antes de terminar de pagar el precio del solar la demandante y su esposo hipotecaron la finca en garantía de $700 a favor de José Ramos Pérez por escritura de 8 de febrero de 1928. Que al terminar de pagar el precio del solar el Sr. Pesquera se dispuso a otorgarles el correspondiente título, pero a requerimiento de Máximo, en prevención de cualquier crisis económica en sus negocios, como él decía, se otorgó la escritura de compraventa del solar a favor de su hermano Faustino Marrero, siendo los verdaderos dueños del mismo la demandante y su esposo. Que a principios de 1929, Máximo Marrero convino con Sebastiana Amador la permuta de la referida casa y solar por una finca rústica perteneciente a sus menores hijos; que al formalizarse la transacción, por indicación de Máximo, compareció Faustino en la escritura aparentando ser dueño de la casa y solar, y al adquirir la finca rústica, siguiendo instrucciones de Máximo, en la misma

escritura la transmitió a Aurora Rosado, madre de ambos, sin causa ni consideración alguna, y por las mismas razones que antes lo habían inducido a ordenar que se transmitiera a Faustino el título del solar adquirido del Sr. Pesquera. Que al fallecimiento de Máximo, la demandada y demás familiares reconocieron como de aquél la finca rústica en cuestión y no dispusieron de la misma sin el previo consentimiento de la demandante, consintiendo ésta en que dicha finca fuese vendida a Sergio Dávila y su esposa Rita Agrait por escritura número 54 de 22 de diciembre de 1932 ante el notario Rafael Muñoz Ramos, con el fin de pagar ciertas obligaciones de la herencia. Que en pago de parte del precio, Sergio Dávila entregó a la vendedora Aurora Rosado, a cuyo nombre aparecía la finca, un cheque por la cantidad de $1,211 contra el Banco Comercial de Puerto Rico, Sucursal de Bayamón, cheque que al ser presentado al cobro no pudo hacerse efectivo porque el citado banco había sido para esa fecha declarado en administración judicial. Convinieron entonces las partes en que Dávila constituiría hipoteca a favor de la vendedora sobre la finca rústica objeto de la transacción. Se constituyó la hipoteca, la cual no pudo inscribirse porque antes de su presentación en el Registro de la Propiedad Sergio Dávila y su esposa la vendieron a Daría Agrait viuda de Carbonell, y ésta a su vez la vendió a un tercero que desconocía el gravamen a favor de Aurora Rosado. El 30 de marzo de 1933 la demandante instó en la Corte de Distrito de Bayamón la administración judicial de los bienes relictos por su esposo Máximo Marrero, y habiendo negado Aurora Rosado que el citado crédito de $1,211 perteneciese a la sucesión de Máximo Marrero, la demandante no pudo llevar dicho crédito al inventario de los bienes dejados por Máximo Marrero. Que no obstante saber Sergio Dávila que el crédito hipotecario de $1,211 correspondía a la sucesión de Máximo Marrero, y no a su madre Aurora Rosado, se disponía a pagarlo a esta última por haberse constituído a favor de ella la hipoteca en cuestión.

Terminó la demanda con súplica de una sentencia que declare que la sucesión de Máximo Marrero es dueña del expresado crédito, que se ordene su pago a la demandante en su carácter de administradora judicial, autorizándosele para que en el indicado carácter otorgue la correspondiente escritura de cancelación de hipoteca; que en el caso de que dicho crédito, hubiere sido pagado total o parcialmente a Aurora Rosado, sea ésta condenada a devolver lo que hubiere cobrado, con sus intereses estipulados en la escritura de hipoteca, y que se condene a los demandados que se opusieren a la demanda al pago de las costas, desembolsos y honorarios de abogado.

Compareció la demandada Aurora Rosado, radicando una moción en la que solicitó la eliminación de ciertos particulares de la demanda; pero antes de someterse la cuestión de derecho suscitada por la moción eliminatoria, la demandante, con fecha 5 de abril de 1934, enmendó su demanda en la siguiente forma: eliminó de la misma a los demandados Sergio Dávila y Rita Agrait; alegó que su esposo Máximo Marrero falleció el 5 de agosto de 1929 sin otorgar disposición testamentaria y sin dejar descendientes, siendo por consiguiente sus únicas y universales herederas su madre la demandada Aurora Rosado y su viuda la demandante. Reprodujo los hechos anteriormente alegados en la demanda original, expresando en la alegación séptima que el 15 de junio de 1933, o sea, dos días antes de la radicación de la demanda original, Aurora Rosado recibió de Sergio Dávila la totalidad del crédito de $1,211, cantidad que se negaba a entregar a la administración judicial de los bienes de Máximo Marrero, y que de igual manera se negaba a rendir cuenta a la demandante de la parte proporcional que como gananciales le corresponde en dicha suma.

Varió la súplica de la demanda en la siguiente forma: Que se condene a la demandada a pagar a la administración judicial de Máximo Marrero la cantidad de $1,211 con los intereses legales correspondientes, o a pagar a la deman-

dante la suma de $605.50 que le corresponde por su mitad de gananciales en dicho crédito, con intereses, costas, gastos y honorarios de abogado.

La demandada radicó el 16 de abril de 1934 una moción en la que solicitó la eliminación de la demanda enmendada por no haberse obtenido permiso para radicarla y por ser, según la demandada, una nueva demanda (seguramente quiso decir una nueva causa de acción) contra partes distintas de las que aparecen en la demanda original. La corte desestimó la moción para eliminar la demanda enmendada el 21 de noviembre de 1935 y concedió a la demandada un plazo de diez días para radicar alegaciones. El 27 de diciembre siguiente radicó la demandada una "Moción sobre Inspección", en la que solicitó que se ordenase a la demandante poner a disposición de la demandada o de su abogado, por conducto de la secretaría, las escrituras a virtud de las cuales adquirió la demandada el título o derecho que alegaba tener al crédito en controversia y que le permitiese sacar copia de dichos documentos. El 2 de enero de 1936 dictó la corte resolución desestimando la "Moción sobre Inspección", y con fecha 11 del mismo mes radicó la demandada una moción eliminatoria de ciertos particulares de la demanda enmendada, moción que también fué desestimada el 20 de marzo de 1936, concediéndosele en la misma resolución diez días "para radicar su contestación."

No contestó, sino que excepcionó la demanda el 30 de marzo de 1936, por el fundamento de no aducir hechos constitutivos de causa de acción. Se desestimó la excepción previa el 7 de abril de 1936, y se le concedió de nuevo un plazo de diez días para contestar la demanda, lo que hizo el 28 de abril de 1936.

En su contestación admitió la demandada el hecho de ser la demandante la administradora judicial de los bienes relictos por Máximo Marrero, pero negó por falta de suficiente información que fueran la demandante y la demandada las únicas y universales herederas de Máximo Marrero, por no

estar en condiciones la demandada de asegurar que Máximo Marrero no tuviese hijos naturales con derecho a heredarle. Negó las demás alegaciones de la demanda jurada, y como defensas especiales reprodujo la excepción previa anteriormente desestimada por la corte, y alegó que la demandada, al quedar viuda, se dedicó al comercio, lo que le produjo beneficios que le permitieron hacer transacciones sobre inmuebles, aunque por su falta de experiencia siempre se asesoraba con alguno de sus hijos, y que las propiedades que adquirió, a que se refiere la demanda, las compró la demandada con su propio peculio, para beneficio suyo, y sin que su hijo Máximo Marrero tuviera interés alguno en las mismas.

Se celebró el juicio oral el 14 de octubre de 1936, con asistencia de ambas partes, y el 11 de enero de 1937 se dictó sentencia declarando con lugar la demanda y condenando a la demandada Aurora Rosado a pagar a la demandante Rufina Acosta, en su carácter de administradora judicial de los bienes relictos por Máximo Marrero, la cantidad de $1,211 con intereses legales a partir de la fecha en que la demanda fué radicada, o sea el 17 de junio de 1933, hasta su pago total, condenándosele también a pagar las costas y honorarios de abogado, que se fijaron en la misma sentencia en la suma de $200.

Apeló la demandada para ante este tribunal y en el alegato que presentó el 29 de noviembre del año pasado, imputó a la corte sentenciadora la comisión de seis errores, renunciando al último de ellos al final de su alegato, por entender que se halla comprendido en los cinco anteriores.

Los seis errores imputados a la corte sentenciadora son:

1. "La Corte de Distrito de Bayamón, P. R., erró al declarar sin lugar la moción de eliminación de la demanda enmendada.

2. "La Corte inferior cometió error al declarar sin lugar la excepción previa interpuesta a la demanda.

3. "La Corte inferior erró al admitir en evidencia una escritura de hipoteca otorgada por Máximo Marrero a favor de José Ramos sobre una casa y solar, para probar título de Máximo Marrero. Y

asimismo erró al admitir la declaración de José Ramos sobre los propios particulares de la tal escritura.

4. "La Corte erró al apreciar la declaración de José L. Pesquera como terminante y definitiva de que él había tenido una sola operación de compraventa de solar con Máximo Marrero, y que el solar sea el descrito en la demanda.

5. "La Corte inferior erró en la apreciación de la prueba, estimándola lo suficientemente clara, robusta y concluyente para destruir la presunción de ser cierto lo contenido en el documento público en que basa su título la demandada.

6. "La Corte de Distrito erró al dictar la sentencia de este caso por ser contraria a derecho y no estar sostenida por la prueba que exige la ley y jurisprudencia."

██ La corte procedió correctamente al desestimar la moción que solicitó la eliminación de la demanda enmendada. Al radicar la demanda original la demandante parece que ignoraba que los esposos Sergio Dávila y Rita Agrait habían pagado a la demandada Aurora Rosado el crédito de $1,211. Actuando bajo esa creencia, los esposos Dávila Agrait eran partes necesarias para que pudiesen ser obligados por la sentencia a pagar el crédito a la demandante y no a su co-demandada Aurora Rosado. Antes de quedar sometida la moción eliminatoria que radicó la demandada contra la demanda original, la demandante hizo uso del derecho que le concede el artículo 139 del Código de Enjuiciamiento Civil, radicando la demanda enmendada sin previo permiso de la corte. No necesitaba tal autorización para radicar la nueva demanda. El hecho de eliminar en la demanda enmendada a los demandados Sergio Dávila y Rita Agrait no varía la causa de acción original incoada contra ellos y Aurora Rosado. No es éste el caso de sustituir un demandado por otro. *Melón Hnos. & Co., S. en C.*, v. *Muñiz de León*, 47 D.P.R. 91. El objeto de la acción fué, en la demanda original, y siguió siéndolo en la enmendada, recobrar para la administración judicial de los bienes relictos por Máximo Marrero, el crédito que originalmente creyó la demandante adeudaban los esposos Sergio Dávila y Rita Agrait, pero que luego

resultó haber sido pagado a Aurora Rosado con anterioridad a la fecha en que se radicó la demanda original.

▇ Sostiene la apelante que la demanda enmendada no aduce hechos constitutivos de causa de acción, por ser dicha demandada "lo que en derecho se denomina un tercero", y porque en ninguna parte de la demanda se alega que ella adquirió la finca de catorce cuerdas "en forma simulada y sin que mediara causa, consideración o precio, ni consentimiento de su trasmitente Faustino Marrero."

De los párrafos 3 y 4 de la demanda enmendada se infiere razonablemente la alegación de que Aurora Rosado no es otra cosa que el instrumento de que se valió Máximo Marrero para ocultar su derecho de propiedad sobre la finca que adquiría a virtud de la permuta. Dichos párrafos dicen así:

"3. Que en el acto de otorgarse la escritura de permuta, compareció Faustino Marrero, hermano de Máximo Marrero, a nombre de quien tenía escriturada la propiedad que dicho Máximo Marrero había de transferir en permuta a la señora Amador, y en su sustitución, el citado Máximo Marrero *hizo comparecer a su señora madre* doña Aurora Rosado, para que en el mismo otorgamiento, Faustino Marrero, que como antes se ha dicho, no tenía interés en tal negocio, transfiriera el título de la finca que en permuta se recibía de la señora Amador a nombre de su señora madre doña Aurora Rosado, como efectivamente se hizo.

"4. Que la forma en que Máximo Marrero llevó a efecto y *se hizo sustituir sin causa ni consideración alguna en el precitado negocio de permuta,* fué uno de los tantos hechos por él, según alegaba, en prevención de una posible crisis en sus negocios, y con el fin de que sus familiares que eran y son insolventes, tuvieran representación económica y social en auxilio de sus negociaciones, todo lo cual hacía dicho Máximo Marrero muy a menudo, con la oposición de su esposa, ahora demandante."

Así parece haberlo entendido la propia demandada, al alegar en su contestación que adquirió la finca rústica con su propio peculio, sin que Máximo Marrero tuviera interés alguno en la misma. (Párrafo *c* de las defensas especiales.) Pero asumiendo que en la demanda enmendada no se alegase

que la demandada adquirió sin causa o consideración, el defecto de la demanda quedó subsanado por la prueba, como veremos más adelante. *D'Azizi* v. *Alcaraz,* 40 D.P.R. 489; *Dávila* v. *P. R. Ry., Light & Power Co.,* 44 D.P.R. 950; *Guijarro* v. *Lluberas,* 50 D.P.R. 718.

■ Como tercer error se alega por la apelante que la corte admitió en evidencia la escritura de hipoteca que Máximo Marrero y su esposa, la ahora demandante, otorgaron a favor de José Ramos Pérez en garantía de la cantidad de $700, sobre la casa y el solar que alega la demandante haber adquirido su esposo por compra a José L. Pesquera, solar y casa que por sucesivas transacciones originaron el crédito de $1,211 objeto de este pleito. Convenimos con la apelante en que el hecho de que una persona constituya una hipoteca sobre un inmueble no es evidencia concluyente de que en efecto sea dueña de dicha propiedad, pues puede darse el caso de que se vendan o se hipotequen bienes ajenos, pero una transacción de esa índole es evidencia de actos de dominio, que en unión del resto de la prueba en este caso presentada por la demandante, tiende a demostrar que Máximo Marrero y su esposa, y no Faustino Marrero, eran los dueños de la propiedad en cuestión.

■■ En evitación de innecesarias repeticiones discutiremos conjuntamente los errores cuatro y cinco por estar íntimamente relacionados.

De la evidencia resulta que siendo novios la demandante y Máximo Marrero, éste construyó una casa en Bayamón, y que durante su construcción en distintas ocasiones la llevó a ver la obra, teniendo oportunidad la demandante de conocer los operarios que trabajaban en la misma. Que más tarde contrajeron matrimonio y la casa fué alquilada por Máximo. Que Máximo y la demandante constituyeron una hipoteca sobre la casa y el solar a favor de José Ramos Pérez, hipoteca que no pudo inscribirse, porque el título del solar, que había sido comprado a plazos, no se había transmitido toda-

vía a Máximo Marrero. Que éste tenía la costumbre de poner sus propiedades a nombre de sus familiares, alegando que lo hacía así en prevención de cualquier dificultad que pudiera tener en sus negocios. Que terminó de pagar el solar al Sr. José L. Pesquera y cuando la esposa esperaba que trajese la escritura del solar a su nombre, le informó que había dispuesto que se otorgase el título a favor de su hermano Faustino, siguiendo su costumbre antes aludida. A este respecto declaró José L. Pesquera que compró una finca a Mrs. Parkhurst, siendo ésta viuda, que el Sr. Parkhurst había vendido a plazos ciertos solares de dicha finca y que al comprarla Pesquera adquirió también los derechos que en dichos contratos tenía la Sra. Parkhurst. Que entre los solares vendidos a plazos se hallaba uno a favor de Juan María Rosado, marcado con el número 1055 del plano de urbanización. Que al terminar de pagar dicho solar Juan María Rosado y Máximo Marrero vinieron a su oficina, indicándole el primero que otorgase la escritura del solar a favor de Máximo, pero que cuando se fué a extender el título, a requerimientos de Máximo se transmitió el solar a su hermano Faustino Marrero.

A preguntas de la demandante manifestó el Sr. Pesquera que no recordaba haber tenido negocios de solares con Faustino Marrero; que le parecía que no había tenido tal negocio, aunque no se atrevía a asegurarlo sin consultar sus records. La demandante solicitó entonces de la corte que se permitiese al Sr. Pesquera consultar sus records, a lo que se opuso tenazmente la demandada. La corte accedió a la petición de la demandante, dictando la siguiente orden:

"La Corte va a acceder a la solicitud y suplica al testigo el mayor esfuerzo por ver dentro del término más breve posible, que pueda estar en condiciones de responder al interrogatorio de las partes en cuanto a su declaración."

Tomó excepción la parte demandada y se retiró el testigo. Continuó el desfile de la prueba de una y otra parte. Ambas cerraron su caso y el testigo Pesquera no regresó a la corte.

Hallándose el solar a nombre de Faustino Marrero, Máximo concertó con Sebastiana Amador la permuta de la casa y el solar por una finca rústica perteneciente a los menores hijos de dicha señora, declarando ésta que en ningún momento trató nada con Faustino ni con Aurora Rosado, y sí únicamente con Máximo Marrero. Obtuvo Sebastiana Amador la correspondiente autorización judicial y al llevarse a cabo la permuta, por instrucciones de Máximo, Faustino transmitió en la misma escritura, a su madre Aurora Rosado, el título de la finca rústica que adquirió en aquel acto.

A pesar de hallarse el título de la finca a favor de Aurora Rosado, Máximo la administraba y dejó al frente de la misma al testigo Domingo Andino Rodríguez, quien la ocupaba desde que pertenecía a los hijos de Sebastiana Amador. Máximo y Andino celebraron un contrato para la siembra de caña y durante los dos últimos años que vivió Máximo, Andino se entendía directamente con él como único dueño en relación con los asuntos de la finca. La caña, que fué sembrada por Andino, al cortarse y entregarse a la Central, fué liquidada y pagada a Rufina Acosta la parte correspondiente a Máximo, declarando además el testigo Andino que nunca recibió órdenes de Aurora Rosado ni de ninguna otra persona.

Después de muerto Máximo Marrero y con el consentimiento de su viuda Rufina Acosta, a fin de pagar ciertas deudas del causante, Aurora Rosado, la demandada, vendió la finca rústica a Sergio Dávila y a su esposa Rita Agrait. La finca se hallaba afecta a cierta hipoteca a favor del Federal Land Bank of Baltimore, la cual asumió el comprador y luego de deducirse contribuciones y gastos de notario, el precio líquido a recibir por la vendedora quedó reducido a $1,211, por cuya suma Sergio Dávila entregó a la demandada un cheque contra el Banco Comercial de Puerto Rico, Sucursal de Bayamón. Al tratarse de cobrar el cheque, resultó que el Banco había sido puesto en administración judicial y no pudo hacerse efectivo, por lo que Sergio Dávila con-

vino en constituir una hipoteca sobre la finca por la cantidad indicada, y es éste el crédito que ha motivado este litigio.

Mientras estas transacciones se llevaban a efecto, Rufina Acosta, la demandante, se hallaba en buenas relaciones con la familia de su esposo, lo que impidió que surgiera dificultad alguna entre ellos por motivos de intereses. Luego se distanciaron, fué nombrada Rufina Acosta administradora judicial de los bienes relictos por Máximo, y al tratar de incluir en el inventario de bienes el crédito de referencia, la demandada Aurora Rosado alegó que era ella la única dueña del mismo. Hallándose Sergio Dávila dispuesto a pagar a Aurora Rosado dicho crédito por estar la documentación extendida a nombre de ella, se radicó la demanda original de este caso, cuyas alegaciones conocemos, presentándose más tarde la demanda enmendada al tener conocimiento la demandante de que el crédito había sido pagado a la demandada.

De la declaración de Rufina Acosta resulta que fué ella en compañía de su esposo Máximo Marrero a pagar ciertos plazos de la hipoteca al Federal Land Bank of Baltimore en San Juan.

Se presentaron en evidencia las escrituras a que hemos venido haciendo referencia, terminando así la prueba de la demandante.

La prueba de la demandada consistió en la declaración de Aurora Rosado, quien manifestó que después de quedar viuda tuvo negocios de ventorrillo, cafetín y otros similares y que con el producto de esos negocios pudo comprar la finca rústica; que vendía huevos, aves, y hasta llegó a traer reses para vender en San Juan, pero que sus hijos le habían botado dinero y que ella tenía a su cargo el sostenimiento de seis hijos, "yernas" y nietos, todos los cuales vivían de su pequeño negocio. No aparece, sin embargo, que Máximo viviera de ella, pero sí que Faustino vivía con ella y ella le ayudaba a mantener sus hijos, y la "yerna" a quien se refiere la demandada tampoco lo es Rufina Acosta, quien según apa-

rece de la prueba, desde que se casó vivió con su esposo Máximo Marrero. En relación con la compra y pago del precio de la finca rústica a Faustino, se desarrolló entre el abogado de la demandante y la demandada el siguiente diálogo:

"P. ¿Cuánto dió usted por la finca?

"R. A Faustino, dos mil quinientos.

"P. ¿En qué sitio usted entregó los $2,500 a su hijo?

"R. Pude haber pagado parte en efectivo y parte en crédito hipotecario.

"P. ¿En qué sitio hizo usted el pago de $2.500?

"T. ¿A Faustino?

"R. ¿En qué sitio, en qué lugar, en qué edificio?

"R. Tiene que ser en mi hogar, por que Faustino Marrero . . . ha caído enfermo y yo he hecho los gastos de Faustino, del médico, medicinas y muchísimas cosas más; además que él me debe entre unas cosas y otras el pago de la casa.

"P. ¿El pago ése fué en su casa?

"R. Sí, señor.

"P. Ahora dígame, ¿cuántos pagos, si fueron varios pagos?

"R. ¿No le digo yo? Faustino cayó enfermo; yo lo curé, llevándole médico, medicinas por mi cuenta y entre unas cosas y otras, y el dinero que le había dado se cubrió la cuenta y algo más que me debe.

"P. En otras palabras, ¿usted le pagó a él el dinero en distintos servicios que usted le hizo, en distintos pagos que hizo en médico y medicinas?

"R. Sí, señor."

Como puede verse por la parte de la declaración de Aurora Rosado que hemos transcrito, al principio declara que pagó a Faustino $2,500 por la finca, parte en efectivo, y parte en crédito hipotecario. Sin embargo, más adelante (récord, pág. 117), al preguntársele cuantos pagos hizo a Fustino, declaró que éste cayó enfermo y que le pagó el precio de la finca con los honorarios médicos y medicinas, y dinero que le había facilitado.

Es verdaderamente raro y debilita considerablemente el caso de la demandada, el hecho de que hallándose Faustino

viviendo con la demandada no hubiese venido éste a declarar, seguramente con más conocimiento y exactitud que lo que podía hacer su madre por sus años y por su ignorancia. También es raro que Guadalupe Marrero, hija de la demandada, quien de la prueba resulta ser una mujer inteligente, puesto que le llevaba cuentas a la madre y la representaba en sus negocios, tampoco haya sido traída a declarar.

El artículo 102 de la Ley de Evidencia en lo pertinente dice así:

"Todas las demás presunciones serán satisfactorias, si no fueren contradichas. Se denominan presunciones disputables y pueden controvertirse mediante otra evidencia. Corresponden a esta clase las siguientes:

"*        *        *        *        *        *        *

"5. Que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere.

"*        *        *        *        *        *        * "

Este tribunal, en el caso de *Méndez* v. *González*, 47 D.P.R. 135, 138, por voz de su Juez Asociado Sr. Wolf, dijo lo siguiente:

"Igualmente es muy significativo en el caso el hecho de que aunque Cecilio Méndez se hallaba presente durante el juicio no ocupara la silla testifical y Aldarondo nunca fué llamado como testigo. Ésta es la supresión de prueba a que el inciso 5 del artículo 102 de la Ley de Evidencia se refiere."

La corte sentenciadora, que vió y oyó declarar los testigos, dió crédito a la prueba de la demandante y parece que no le mereció alguno la declaración de la demandada, no obstante los documentos notariales en que aparecían Faustino Marrero y Aurora Rosado como dueños de las fincas antes mencionadas. La corte entendió que estos dos últimos, Faustino y Aurora, no eran los dueños verdaderos de las respectivas fincas y que el verdadero dueño de las mismas fué Máximo Marrero, con lo que estamos conformes.

El hecho de que el Sr. Pesquera pudiera haber vendido algún otro solar a Faustino Marrero en nada altera la resolución del caso. Él declaró positivamente y sin vacilaciones que el título del solar en cuestión, radicado en la calle Ferrer y Guardia,. lo transmitió a Faustino a requerimientos de Máximo, y ese solar, perfectamente conocido por Rufina Acosta desde antes de casarse, el mismo en que se construyó la casa que ella vió fabricar, fué el que se dió en permuta por la finca rústica de los menores hijos de Sebastiana Amador. De manera, pues, que no debe existir controversia en cuanto a la identidad del solar. Si fué errónea la declaración del testigo Pesquera, ¿por qué no la impugnó la demandada? Si como insinúa la demandada sin intentar probarlo, Faustino Marrero hubiese comprado otro solar al Sr. Pesquera, ¿quién hubiera podido estar en mejores condiciones que el propio Faustino para demostrarlo? Sin embargo, no lo intentó siquiera, a pesar de tratarse de un pleito contra su madre y vivir él en su compañía.

Entendemos que el juez sentenciador no cometió error alguno en la apreciación de la prueba, y a pesar de la jurisprudencia de este tribunal en los casos de *Ríos* v. *Amorós,* 27 D.P.R. 804; *Cruz* v. *López,* 17 D.P.R. 42; *Cortijo* v. *Orta,* 46 D.P.R. 925; *Sucn. Delgado* v. *Sucn. Villamil,* 41 D.P.R. 569, y *Hernández* v. *Fernández,* 17 D.P.R. 112, en que se sostiene que en caso de duda la declaración contenida en escritura pública debe prevalecer, sostenemos que el juez sentenciador dirimió correctamente el conflicto de la prueba y que la preponderancia de la misma está fuertemente a favor de la demandante.

*Por lo expuesto, procede desestimar el recurso y confirmar la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.